SAMUEL BERMAN v. MINNESOTA STATE AGRICULTURAL SOCIETY.[1]

July 29, 1904.

Nos. 13,858—(111).

**Status of Defendant.**

Under chapter 126, p. 170, Laws 1903, wherein the state was given the title and entire control of the property and funds of the previous State Agricultural Society, upon its acceptance (which must be presumed) its successor, the Minnesota State Agricultural Society, was clothed with public duties, became a department of the state, and immune from suits brought for the wrongful conduct of its servants.

[1] Reported in 100 N. W. 732.

**Action for Wrongful Arrest.**

In an action to recover for a wrongful arrest of a person visiting the fair grounds by the servants of the Minnesota State Agricultural Society, *held*, the association was not the subject of a claim for damages, but the relief for such a wrong can only be redressed by the legislature.

**Collateral Attack.**

The question of the legality of the transfer of the original State Agricultural Society and its acceptance by the state is not open to attack in a private action, but can only be inquired into by the original society or the state upon quo warranto.

**Statute.**

The act of 1903, p. 170, c. 126, is not subject to the objection that it is special or class legislation.

Appeal by plaintiff from an order of the district court for Hennepin county, Harrison, J., setting aside the service of summons. Affirmed.

*Hall & Kolliner* and *F. C. Heffron,* for appellant.

*W. J. Donahower,* Attorney General, and *Franklin H. Griggs,* for respondent.

LOVELY, J.[2]

In this action it is sought to recover damages from the Minnesota State Agricultural Society by plaintiff, who, while a visitor at its grounds during the last annual fair, claims to have been arrested and imprisoned upon an alleged unfounded criminal charge by one of the policemen appointed by and acting for the managers. The facts alleged in the complaint are such as would furnish legal grounds for a recovery against a private individual or corporation. Defendant appeared specially, and moved to set aside the service upon the affidavit of its secretary setting forth, in substance, that defendant corporation was the representative of the state of Minnesota, acting by virtue of authority conferred by chapter 126, p. 170, Laws 1903; that under such act it had charge of the fair grounds; that neither the society, affiant, nor any employee had done anything in the management of the grounds or in conducting the fair save and except in behalf of the state

[2] DOUGLAS, J., having been of counsel, took no part.

of Minnesota, which was the owner of the grounds as well as all funds arising from the management and administration of the fair which was held by the officers of the society solely as the trustees of the state. In reply plaintiff filed an affidavit setting forth that the defendant was a private corporation, organized and existing under various acts of the legislature of Minnesota, which were referred to therein; that such society maintained and carried on a fair exhibition at the State Fair Grounds, consisting of horse racing, entertainments, displays of fireworks, aside from its exhibition of live stock, agricultural machinery, products of the farm, goods and merchandise of every character. The trial court, upon the view that the defendant was one of the agents of the state, and in executing governmental functions was immune from direct attacks of this character, set aside the service, from which order plaintiff appeals.

Since the adoption of the eleventh amendment to the constitution it has been uniformly held that a suit by an individual cannot be maintained against a sovereign state without its consent. Briscoe v. President, 11 Pet. 321; Board of Liquidation v. McComb, 92 U. S. 531; Cunningham v. Macon & B. R. Co., 109 U. S. 451, 3 Sup. Ct. 292, 609; Reagan v. Farmers' L. & T. Co., 154 U. S. 390, 14 Sup. Ct. 1047. And the question presented on this review is whether the defendant society is relieved from liability to civil actions by reason of its relationship to the state as one of its agencies engaged in the performance of governmental functions in the same manner and to the same extent as the state for whom it claims to have been acting in the matters complained of.

It must also be taken as settled that an executive officer of the state is not subject to the control or interference of the judiciary in the performance of duties belonging to him as such officer, and cannot be proceeded against in a civil suit without some legislative permission. Rice v. Austin, 19 Minn. 74 (103); State v. Dike, 20 Minn. 314 (363); St. Paul & C. Ry. Co. v. Brown, 24 Minn. 517; Western R. Co. v. De Graff, 27 Minn. 1, 6 N. W. 341; State v. Whitcomb, 28 Minn. 50, 8 N. W. 902. The state may and must commit the discharge of its sovereign political functions to agencies selected by it for that purpose. Such agencies, while engaged exclusively in the discharge of such public duties, do not act in any private capacity, but stand in the place of

the state, and exercise its political authority. Therefore, when the state creates public corporations solely for governmental purposes, such corporations, while engaged in the discharge of the duties imposed upon them for the sole benefit of the public, are clothed with the immunities and privileges of the state; and no private action, in the absence of an express statute to that effect, can be maintained against them for negligence in the discharge of such duties. Lane v. Minnesota State Agric. Soc., 62 Minn. 175, 64 N. W. 382.

The fair grounds where the annual exhibitions have been held for many years, with the buildings thereon, were, and since the decision of Lane v. Minnesota State Agric. Soc. have been, the property of the state. This court in that case, upon a careful and exhaustive examination of the previous legislation on the subject, held that, while the interest of the state and its recognition of the prescribed duties of its officers and servants in certain respects made the State Agricultural Society a quasi public corporation, yet that its ultimate control of the emoluments and revenues were so far private and beneficial to the association that it was liable for an injury through its negligence to a person engaged in a trial of speed which it authorized and provided for as one of the entertainments of the exhibition.

Subsequent to the decision of Lane v. Minnesota State Agric. Soc., chapter 126, p. 170, Laws 1903, was enacted, wherein it was provided that the existing rights of the former society were confirmed. It was declared to be a public corporation, and one of the departments of the state; its membership and constituency was continued; the management and control of its affairs was vested in certain executive officers, known as a "board of managers," who were to determine upon an executive officer or agent, who was required to submit his report annually to the governor, to be printed and distributed at public expense; the title to all moneys and property of the State Agricultural Society was thereafter vested in the state of Minnesota. It provided that there should be no dividends of its assets among its members, but that all moneys received should be used and employed in holding an annual exhibition of the agricultural, stock-breeding, horticultural, mining, mechanical, industrial, and other products and resources of Minnesota, and the furnishing of such attractions and amusements at such exhibition as the governing board of the said society should deem necessary.

Also that the care and control of the premises referred to is vested in the society as a department of the state government, whose offices shall be there maintained. Also that the society and the governing board provided for in the act might adopt ordinances and regulations of a legislative character similar to those conferred upon municipalities; that it should have and maintain a police force, whose officers were endowed with the powers possessed by constables at common law; and that it should maintain a public jail. And it may be said in passing that the acts complained of in this case—the charge for which plaintiff was arrested—were such as, if well founded, would have justified his arrest and detention in custody at that place.

On first impression the giving of exhibitions as trials of speed, etc., would not seem to be an ordinary function of state government; but it cannot be questioned that the exhibition of the arts' and products of the commonwealth has a direct tendency to enhance its agricultural, mechanical, and material interests, and is to the highest degree of practical utility in the development and progress of the state; and it may be said with reason and propriety that lawful amusements and attractions provided for by the management are not useless, nor without advantage to secure these general purposes, but calculated to subserve the main objects contemplated by the act. This would undoubtedly be the unanimous judgment of the people of this state, as it has been in most, if not all, the members of our federal Union. Institutions of this character have been recognized as an arm or agency of the state, organized for the promoting of the public interest. Hern v. Iowa, 91 Iowa, 97, 58 N. W. 1092; State v. Robinson, 35 Neb. 401, 53 N. W. 213.

In view of these considerations we have reached the conclusion that the transfer of all right and control to the funds and emoluments by the original society to the state, who was the owner of the grounds, would, upon acceptance, secure the manifest purpose of the act of 1903, which was to relieve the original society of any private interest or control over the same. The logical result of this view is that the Minnesota State Agricultural Society is now a state department; that the state has recognized the officers of the society as they existed as servants of the state performing governmental duties and functions; and that the corporation must be relieved from actions for damages to deplete the funds in its hands, which are reserved for specified pur-

93 M.—9

poses, but might be transferred at any time by the legislature to the state treasury. The necessary result of this conclusion places the society directly under the exclusive authority of the state, which may change its officers or its organization and provide for different regulations for the government of the fair, as the best interest of the public may, in the judgment and wisdom of the legislature, hereafter determine. Hence for such injuries as plaintiff claims to have sustained an appeal to the legislature furnishes the only redress, and we must assume that it will be granted if deserved.

We have not regarded it important that there was no proof of an actual transfer by the society to the state, nor an acceptance by the latter. It is sufficient to say with reference to this claim that it is not open to the plaintiff. We must take judicial notice of the fact that since the enactment of chapter 126, p. 170, Laws 1903, the transfer of the rights of the original society may be presumed. The state does not contest the validity of the same, has not done so, and the objection that the officers of the fair are not performing governmental functions as officers of the state can only be raised in a direct proceeding by quo warranto to test their rights in that regard.

It cannot be properly claimed, either, that the act in question, although it repeals a statute affecting a private corporation, is open to the objection that it is special or class legislation prohibited by the constitution. The legislature, by its clearly defined purpose, accepted an agency at hand, made it an arm of the state government, and there can be no question that the state has the power and authority to protect its own interests, and to treat every subject of its sovereignty as within a class by itself—as the State University and the commissions for the erection and management of state buildings.

Order affirmed.