# CLARENCE R. WILKINSON and Others v. HUGH V. MERCER.[1]

March 20, 1914.

Nos. 18,316, 18,356—(144, 145).

**Minnesota Employees' Compensation Commission.**

1. The Minnesota Employees' Compensation Commission created by Laws 1909, c. 286, was not a governmental agency of the state, nor were its members public officers, so that they were relieved from personal liability for debts, contracted in the name of the commission, beyond the amount of its appropriation, with a creditor having no knowledge of the deficiency.

**Same — debts in excess of appropriation.**

2. If the members contracted debts in behalf of the commission, in excess of their appropriation, without disclosing its condition, they are personally liable; but if they disclosed the condition of the appropriation, so that the plaintiffs, who contracted to do work for them, knew that the fund would be insufficient to pay for the work for which they contracted, and they dealt with them as a commission, without stipulating for personal liability, they cannot recover of them personally.

**Variance.**

3. With the ground of liability as stated there was no variance between the complaint alleging a contract with the defendants and proof that the defendants did not disclose the condition of the fund; nor did the fact that the plaintiffs obtained knowledge of the condition of the fund, after the performance of a substantial portion of the work, prevent a recovery.

**Verdict sustained by evidence.**

4. Applying the rules stated it is *held* that the evidence justifies the verdict for the plaintiffs.

Action in the district court for Hennepin county against Hugh V. Mercer, George M. Gillette and William E. McEwen to recover a balance of $579.06. The separate answers of defendants Mercer and McEwen alleged that defendants were the duly qualified and acting commissioners of the Minnesota Employees' Compensation Commis-

[1] Reported in 146 N. W. 362.

sion, appointed by virtue of Laws 1909, c. 286, and acting only as an agency of the state of Minnesota, exclusively in the discharge of its duties in sovereign and political functions; that defendants were required by the act mentioned to make their report to the legislature of 1911; that there had not been sufficient funds appropriated to pay for the printing of the report, and when it came time to print the same the commission had but $166.09 which it could devote to that purpose, as plaintiffs well knew; that the commission had previously given plaintiffs a large amount of other printing and had paid them a great portion of the amount of the total appropriation; that a dispute existed as to whether a portion of the bills then outstanding was not excessive, and in order to dispose of the matter the commission, through its chairman acting on behalf of the state, agreed with plaintiffs that they should publish the report for the state of Minnesota; that the cost of publishing the same and the previous bills should be presented to the legislature, and that the plaintiffs would take their chances about the legislature appropriating enough more to make the payment therefor above the balance of $166.09, which it was agreed should be paid upon the bill; that the chairman also agreed with plaintiffs that, if the legislature should fail to appropriate money enough to pay the printing he would individually pay $162.85 to cover the amount previously in dispute, but the commissioners to pay no more; that the sum of $166.09, admitted in the complaint, being the balance of the appropriation, was paid; that the commission did all in its power to get such appropriation; that the legislature did not appropriate money to pay for the printing or any part thereof; that after it adjourned the chairman paid the amount so agreed upon promptly, to wit, $162.85; that none of the defendants made any other or further individual agreement or had any other or further individual responsibility than that mentioned above. The reply denied all the foregoing allegations of the answers.

The case was tried before Jelley, J., who denied the motion of defendants for a directed verdict in their favor, and a jury which returned a verdict against the defendants and each of them for $638.45 and added to their verdict: "We, the jury, in the above entitled case further recommend that time be given to the said defendants until

May 1, 1913, in order that they may have opportunity to go before the legislature during the session that convenes in January, 1913, for the purpose of securing the amount from the state legislature that said defendants are held for; and we further recommend to the state legislature the payment of said amount." Defendants' motion for judgment notwithstanding the verdict or for a new trial was denied. From the judgment entered pursuant to the verdict, defendants Mercer and McEwen took separate appeals. Affirmed.

*Wilson, Mercer, Swan & Stinchfield,* for appellants.

*Van Derlip & Lum,* for respondents.

DIBELL, C.

By Laws 1909, c. 286, p. 338, the legislature created the Minnesota Employees' Compensation Commission, composed of three members, appointed by the Governor by and with the consent and advice of the senate. They held office until the end of the general session of the legislature of 1911. It was made their duty to collect data and information relative to workmen's compensation, and to cause the operation of laws in other states and foreign countries to be investigated, and to make a written report to the legislature on the first day of the legislative session of 1911, together with a bill or bills drafted by the commission, providing a plan for a speedy remedy for employees for injuries received in the course of their employment. The defendants, Mercer, Gillette, and McEwen, were apponted commissioners and qualified as such. No compensation was allowed them. They were allowed their expenses. Provisions relative to the payment of expenses were as follows:

"Sec. 9. (d) Said commission shall have power to employ such help and assistance as it may deem necessary and expedient from time to time, and pay all necessary expenses.

"Sec. 10. No compensation shall be allowed to any of the members of said commission as such, but the necessary expenses incurred by the commission in carrying out the provisions of this act shall be allowed, not to exceed in the aggregate the sum of five thousand dollars."

The plaintiffs printed the report for the commission and finished

it in the early part of 1911. After the payment to the plaintiffs of what remained in the fund of $5,000 there was still an amount owing them. They sued the defendants individually in December, 1911, and recovered a verdict for $638.45 on December 4, 1912. The defendant Gillette paid one-third. Judgment was entered against the defendants Mercer and McEwen, and they appeal.

1. The defendants insist that they constituted a governmental agency of the state and are not personally liable for contracts made in the performance of their duties. In support of this contention they cite such cases as Berman v. Minnesota State Agricultural Society, 93 Minn. 125, 100 N. W. 732; Berman v. Cosgrove, 95 Minn. 353, 104 N. W. 534, and George v. University of Minnesota Athletic Assn. 107 Minn. 424, 120 N. W. 750, all of which recognize the principle exempting from liability agencies of the state. They further contend that they were public officers within the principle which exempts public officers from personal liability for contracts in good faith entered into with others having equal means of knowledge with themselves, within the principle of such cases as First Nat. Bank of Detroit v. Board of Co. Commrs. of Becker County, 81 Minn. 95, 83 N. W. 468, and Schieber v. Von Arx, 87 Minn. 298, 92 N. W. 3.

We are unable to accept these views. The commission was created to make an important investigation requiring special knowledge and skill and to make a report of their investigation as a basis for scientific legislation. It was performing a valuable and uncompensated public service. Its members were selected because of their special knowledge and training. The commission was not, however, in the sense meant by the cases cited, a governmental agency of the state. Its duration was limited. It was not a continuing body. Its work was to be done with the close of the 1911 session of the legislature. Its appropriation was definite and limited and a further one was not in contemplation. Its members were in a sense public officers; but as such they were not relieved from liability on contracts made in behalf of the commission calling for expenditures in excess of the appropriation, within the cases cited, upon the theory that they were public officers and that those with whom they contracted had equal knowledge with them of the condition of the fund appropriated

for their use. Holding that the defendants are not relieved of personal liability because they constituted a governmental agency of the state, or because they were public officers, we pass to a consideration of their liability, if any, upon the facts shown by the record. ·

2. If the defendants are personally liable it is upon a ground other than that of a true contract entered into between the plaintiffs and the defendants personally. The plaintiffs did not suppose that they were getting a personal obligation of the defendants to pay. The defendants did not intend to assume a personal obligation to pay. The intention of all was that the state would pay. The plaintiffs had done other work for the commission, for which the state had paid, and they expected the state to pay for this work. If there had been sufficient money in the appropriation the defendants would in no event be personally liable. If they are liable it is not because of an express agreement between them and the plaintiffs that they would pay, nor because of an agreement implied in fact. Confessedly there was neither. If they are liable it is because by their conduct they are held to have represented that the commission had the requisite fund and must now make the representation good, or because, there being no fund as represented, they will not be heard to say that they did not personally undertake to pay. It does not matter much which ground is adopted. Their liability cannot be accounted for upon the theory of a true contract. Their situation is much like that of an agent who contracts upon the assumption that he is pledging his principal's credit when he is not, or of a corporate officer who contracts upon the assumption that he is pledging the credit of his corporation when he is not. We are of the opinion that if the defendants did not disclose the insufficiency of the appropriation, and the plaintiffs were ignorant of it, they are personally liable; but that if they did disclose it, and the plaintiffs still dealt with the defendants as a commission, without stipulating for personal liability, the defendants are not liable.

3. With the ground of liability as stated there was no variance between the complaint alleging a contract with the defendants and proof of their liability arising because of a failure to disclose the condition of the fund. Nor does the fact that the plaintiffs obtained knowl-

edge of the insufficiency of the fund after doing a substantial portion of the work prevent a recovery upon the ground that there was then a complete break. Upon the theory which permits a recovery they are held to have represented that there was a sufficient fund, and cannot now deny it, or will not be heard to say that they did not undertake to pay.

4. The defendants claim that when the arrangement was made with the plaintiffs to do the printing, and some time about the latter part of 1910, they were informed of the condition of the appropriation, knew that it would be insufficient to pay for the work, and agreed to take what was left in the fund and to look to the legislature for payment of the balance. ·They concededly knew before the work was completed of the insufficiency of the fund to pay for their work in full. The evidence is very persuasive that the plaintiffs knew of the condition of the fund from the first, and that an agreement as claimed by the defendants was made with them. Their subsequent acts were all in accord with such an agreement. They received and applied in March, 1911, the balance of the $5,000 appropriation. In May, 1911, after the adjournment of the legislature, they received from Mercer a check for printing a pamphlet or book which he had prepared called "Workers' Compensation," which was used before the legislature with other printed matter, and which he, with entire propriety, used as a thesis at the university for a degree. Mercer had agreed to pay for it if the legislature did not appropriate. When the defendants received these payments there was no suggestion that the defendants then or ever pay more; nor did plaintiffs ever make a claim that the defendants were personally liable until their demand of payment preliminary to the bringing of suit in December, 1911.

A majority of the court are of the opinion that the verdict, having met the approval of the trial court, should not be disturbed. While not of the slightest consequence in the determination of this case, it is not to be thought that the defendants will lose the amount which they are required to pay. They performed a distinguished and uncompensated service in an investigation for which they were chosen because of their peculiar fitness. The state has accepted their work, made use of it, and it is now the basis of an important body of statu-

tory law. The state will not receive their freely given service and finally refuse to pay their expenses though they slightly exceed the $5,000 appropriation.

A minority of the court are of the opinion that a new trial should be had. They concede that there is some evidence in support of a recovery, but they regard the case as within the exceptional class of cases where the appellate court should withhold approval of a verdict. In their opinion the conduct of the plaintiffs throughout the transaction was so utterly at variance with the claim which they now make and which they must establish if they sustain a recovery, and their testimony so weak and vacillating, and at times so much of a substantial admission of the defendants' precise claim, that another jury should consider the case. They regard the recommendation of the jury that proceedings be stayed until the next session of the legislature, though not of controlling importance, indicative that they were working out a result without confining themselves to the issues upon which liability depended, and suggestive of a notion on their part that the defendants were in the better position to obtain an appropriation from the legislature. They feel that the issues have not been fairly presented to and considered by a jury, that likely the result is an injustice to the defendants, and that the judgment should be reversed and a new trial granted.

Judgment affirmed.