MORRISON, Respondent, vs. FISHER and others, imp., Appellants.

*February 11—May 4, 1915.*

*State board of agriculture a public corporation: Holding of state fair a governmental function: Attractions: Discretion of board: Aviation exhibition: Injury to spectator: Liability of board or its members: Negligence.*

1. The Wisconsin state board of agriculture, organized under secs. 1456–1458b, Stats., and given control of the affairs of the department of agriculture and of state fairs and fair grounds, is a corporation organized for purely public purposes.
2. The holding of a state fair under the management of such board is the carrying on of a governmental function of the state, and since the board derives no pecuniary benefit therefrom no private or proprietary interest is involved.
3. The providing of entertainments and attractions (such as an aviation exhibition), legitimate and educational in their nature and serving to increase the attendance at the fair, is within the scope of the authority of the board in carrying on such governmental function, and it has a broad discretion in determining what exhibitions may be given.

4. The state board of agriculture is not liable for negligence of its officers and agents in giving such an exhibition at the state fair resulting in injury to a patron of the fair.

5. The board not being liable for such injury, the members of the board could not be charged with liability unless they were guilty of such misconduct in the discharge of their duties as would render them liable as individuals.

6. The board made a contract for an aviation exhibition at the state fair, in accordance with which the board cleared of obstructions the infield of the race track, and the other party furnished an aeroplane fully equipped and in charge of a competent aviator, to whom was left the whole matter of making the flights, including the place from which the ascents should be made. He selected and used the race track in front of the grand stand as the best starting place, stating that the danger was in alighting and that the infield should be kept clear for that purpose. He made successful flights on three successive days. While attempting to ascend on the fourth day, the machine settled down and struck and injured the plaintiff, a spectator. The jury found that there was no negligence on the part of the aviator in handling the machine, but that certain members of the board were guilty of negligence in participating in or permitting the starting of the machine from the race track. *Held*, that such members, though present, were charged with no duty to control the management of the machine or to direct that it be started from the infield, and were not guilty of actionable negligence in permitting the ascent from the race track.

APPEAL from a judgment of of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Reversed.*

This is an action brought against the defendants as members of the state board of agriculture to recover for personal injuries sustained by the plaintiff while attending the state fair. It is alleged in the complaint that as such board it was the duty of the defendants to exercise sole control of the affairs of the department of agriculture and of state fairs and make such by-laws, rules, and regulations in relation to the management of the business of such department and state fairs as should from time to time be determined; that in 1910 between the 12th and 16th of September, at West Allis, Milwaukee county, Wisconsin, the defendants as such board held a fair and that at such fair there were exhibited products of

agriculture, dairying, horticulture, manufactures, and domestic arts, and that said defendants as such board provided in connection with such fair as a special attraction for patrons an exhibition of flying by an aeroplane; and that such fair and grounds were under the sole direction and control of the defendants as such board; that said fair was widely advertised and the public invited to attend the performances and the exhibition of flying by the aeroplane; that the defendants as such board made a contract with Wright Bros. for giving the exhibition; that by the terms of said contract it was provided that the defendants as such board were to furnish the infield of the race track free from obstructions and to assume all liabilities to the general public resulting from accident occurring on the infield; that at such fair grounds there was a large grand stand which faced the infield and two race tracks; that the defendants without authority from said board negligently took charge of, permitted, and directed that said aeroplane should be caused to rise not from the infield, but from the one-mile track directly in front of the grand stand, which was exceedingly dangerous to those in attendance; that on the 16th of September, 1910, the plaintiff was in attendance at said fair and paid the requisite fee for entrance and also purchased a ticket for admission to the grand stand; that it was the duty of the defendants as such board and the defendants personally to furnish the public, including the plaintiff, with a safe place for viewing the exhibitions and attractions and particularly the flight of the aeroplane, and to engage competent operators to guide it, and to take such suitable and sufficient precautions necessary to prevent plaintiff from being in a position of peril at such time and place of falling of said machine; that contrary to the contract between said board and Wright Bros. and at the direction and permission of the defendants said Wright Bros. attempted to give an exhibition flight in said aeroplane by causing it to rise from the one-mile track directly in front of the grand stand, which defendants well knew was danger-

ous to spectators and onlookers; that when said aeroplane had traveled only a short distance, suddenly, because of lack of control over it, it was caused to descend in front of the grand stand and upon the plaintiff, seriously injuring her.

The answer put in issue the material allegations of the complaint, after admitting that William MacLaren, *Grant U. Fisher, C. H. Everett, George Wylie,* George C. Cox, F. A. Cannon, *George McKerrow,* Charles L. Hill, John L. Herbst, James J. Nelson, *Ed. Nordman,* and L. E. Scott together with David Wedgwood constituted the board of agriculture of the state of Wisconsin by virtue of their appointment by the governor of said state and due qualification. The answer also set up contributory negligence on the part of the plaintiff.

On the trial a verdict was directed in favor of all of the defendants except the appellants here. The jury returned the following verdict:

"(1) Was it negligence to make the flight with the aeroplane from the place where it was attempted on September 16, 1910? *A.* Yes.

"(2) If you answer the first question 'Yes,' was such negligence the proximate cause of the plaintiff's injury? *A.* Yes.

"(3) Did either of the defendants *Fisher, Everett, Wylie, McKerrow, Nordman* participate in the starting of the aeroplane on the race track? *A.* Yes.

"(4) If you answer question 3 'Yes,' then name those so participating. *A. Grant U. Fisher, C. H. Everett, George Wylie, George McKerrow, Ed. Nordman.*

"(5) Did either of the defendants *Fisher, Everett, Wylie, McKerrow, Nordman* consent to the starting of the aeroplane on the race track? *A.* Yes.

"(6) If you answer question 5 'Yes,' then name those who so consented. *A. Grant U. Fisher, C. H. Everett, George Wylie, George McKerrow, Ed. Nordman.*

"(7) If you have answered question No. 4 by naming some of the defendants, then answer: Ought said named defendants, in the exercise of ordinary care, to have anticipated that because of the ascent of Hoxey from the race track some

such injury as occurred to the plaintiff was likely to happen?
*A.* Yes.

"(8) If you have answered question No. 6 by naming
some of the defendants, then answer: Ought the said defend-
ants, in the exercise of ordinary care, to have anticipated
that because of the ascent of Hoxey from the race track some
such injury as occurred to the plaintiff was likely to happen?
*A.* Yes.

"(9) Was Hoxey's manner of controlling the aeroplane
the sole proximate cause of the injury to the plaintiff?
*A.* No.

"(10) Was Hoxey's manner of controlling the aeroplane
a proximate cause of the plaintiff's injury?   *A.* No.

"(11) Did Hoxey at the time he attempted to make the
ascent handle his aeroplane in a negligent manner?   *A.* No.

"(12) If you answer the last question 'Yes,' was his so
handling the aeroplane a proximate cause of the plaintiff's
injury?   *A.* ——.

"(13) Did the plaintiff assume the risk attendant upon a
flight of the aeroplane in the manner in which it occurred?
*A.* No.

"(14) Did any want of ordinary care upon the part of
the plaintiff proximately contribute to her injury?   *A.* No.

"(15) What sum will reasonably compensate the plaintiff
for the injuries she sustained?   *A.* $3,000."

Judgment was ordered on the verdict in favor of the plaint-
iff against the defendants appealing.   Judgment was entered
accordingly, from which this appeal was taken.

For the appellants there were briefs by *Glicksman, Gold &*
*Corrigan,* attorneys, and *George B. Luhman,* of counsel, and
oral argument by *Nathan Glicksman.*

For the respondent there were briefs by *J. O. Carbys* and
*Houghton, Neelen & Houghton,* and oral argument by *A. B.*
*Houghton.*

Kerwin, J.   Two main questions arise upon this appeal:
(1) Whether the board is liable in its corporate capacity;
and (2) Whether appellants are individually liable.

1. The Wisconsin state board of agriculture is organized under secs. 1456 to 1458$b$, Stats., inclusive. The object of the statute is the establishment of a department of agriculture which is to be managed by this board to promote the interests of agriculture, dairying, horticulture, manufacturing, and the domestic arts. The board is to be appointed by the governor and shall consist of one member from each Congressional district and two from the state at large for a term of three years from the 1st day of January in the year of their appointment, and vacancies shall be filled by the governor; the members of the board shall be allowed only their actual expenses, but in case the members are chosen superintendents of departments any such superintendent may be allowed not to exceed $5 per day and reasonable expenses while necessarily engaged in such work, the time to be devoted to such services to be fixed by majority vote of the board. The statute further provides for the holding of an annual meeting, the election of a president and vice-president, and some person not a member as secretary, and that the state treasurer shall be *ex officio* treasurer of the board; that the board may occupy such rooms in the capitol as may be assigned for that purpose by the superintendent of public property, shall have sole control of the affairs of the department of agriculture and state fairs and fair grounds, and make such by-laws, rules, and regulations in relation to the management of the business and state fairs as they shall from time to time determine; that whatever money shall be appropriated or otherwise received by said board shall be paid to the state treasurer and disbursed by him.

It seems clear from the provisions of the statute that the board when organized is a corporate entity with power to contract, sue, and be sued. *Tongue v. State Board of Agr.* 55 Oreg. 61, 105 Pac. 250; *Kent Co. Agr. Soc. v. Houseman,* 81 Mich. 609, 46 N. W. 15; 1 Dillon, Mun. Corp. (4th ed.) p. 74, §§ 42, 43, 54; *State ex rel. Priest v. Regents,*

54 Wis. 159, 11 N. W. 472. It is a public corporation pro-
vided for by the statute and organized for purely public pur-
poses as an arm or agency of the state to carry on a function
impressed with a public purpose for the benefit of the people of
the state. It is plain, therefore, that the board of agricul-
ture as a public corporation made the contract for giving the
aeroplane exhibition. The proceedings of the board and the
contract made clearly show this. The giving of the state fair
and exhibitions is done by the state through this agency in
the discharge of a governmental function to promote the gen-
eral welfare of the people of the whole state, and no private
or local interests are subserved. No benefit is derived by the
board in a proprietary capacity, but the benefits are for the
governmental and sovereign purposes of the state. Under
the statutes of the state appropriations are made by the state
to defray the expenses of carrying on fairs, and the revenues
derived are applied to reduce or defray, so far as they go, the
expense of carrying on the governmental function. Numer-
ous statutes passed from time to time show appropriations
and provisions made by the state for the state board of agri-
culture. Ch. 351, Laws of 1897; ch. 355, Laws of 1901;
ch. 227, Laws of 1903; ch. 418, Laws of 1905; ch. 460, Laws
of 1907; ch. 392, Laws of 1909. Various other appropria-
tions have been made by the state for this department dating
back to 1852.

The weight of authority is to the effect that the giving of a
state fair under statutes similar to ours is a governmental
function. *Minear v. State Board of Agr.* 259 Ill. 549, 102
N. E. 1082; *Berman v. Minnesota State Agr. Soc.* 93 Minn.
125, 100 N. W. 732; *Berman v. Cosgrove,* 95 Minn. 353,
104 N. W. 534; *Hern v. Iowa State Agr. Soc.* 91 Iowa, 97,
58 N. W. 1092; *Melvin v. State,* 121 Cal. 16, 53 Pac. 416.

The authorities are also to the effect that exhibitions in
connection with fairs which afford entertainment to the pub-
lic are proper exhibits and within the scope of attractions

contemplated by the statute as properly belonging to a state fair, because necessary to make the fair a success; and the board has a reasonable, sound discretion in determining what exhibitions shall be given. *Minear v. State Board of Agr., supra.*

In *Berman v. Minnesota State Agr. Soc., supra,* it is said:

"On first impression the giving of exhibitions as trials of speed, etc., would not seem to be an ordinary function of said government; but it cannot be questioned that the exhibition of the arts and products of the commonwealth has a direct tendency to enhance its agricultural, mechanical, and material interests, and is to the highest degree of practical utility in the development and progress of the state; and it may be said with reason and propriety that lawful amusements and attractions provided for by the management are not useless, nor without advantage to secure these general purposes, but calculated to subserve the main objects contemplated by the act. This would undoubtedly be the unanimous judgment of the people of this state, as it has been in most, if not all, the members of our federal Union. Institutions of this character have been recognized as an arm or agency of the state, organized for the promoting of the public interest."

It is contended, however, by counsel for respondent that the giving of the aeroplane exhibition was *ultra vires* and beyond the scope of the authority of the board, because such exhibition had nothing to do with "agriculture, dairying, horticulture, manufactures, or domestic arts," but was given solely for entertainment of patrons present at the fair. But such entertainments, legitimate and educational in their nature, and which attract patrons and swell the attendance at fairs, are not beyond the scope of authority of the board to provide for and exhibit. In fact it may be said that entertainments calculated to attract the public are or may be necessary to the successful carrying on of a fair, and so the board has broad discretion in determining what exhibitions may be given.

The giving of the aviation exhibition at the time in question was not only entertaining and attractive and contributed to the success of the fair, but was instructive as well, and we think was clearly within the scope of the authority of the board as tending to disseminate information calculated to educate and benefit the people of the state and thereby advance its material interests.

The holding of the state fair, including the giving of the aeroplane exhibition, was the carrying on of a governmental function of the state from which the board derived no pecuniary profit.

Counsel for respondent cites us to authorities respecting the acts of municipal corporations and also some cases respecting agricultural societies as supporting their position that the board is liable for the negligence of its officers and agents.   There is perhaps some lack of harmony in the utterances of the courts upon the subject, but we think a careful examination of the cases will show that they turn upon the question of whether the undertaking involved a wholly governmental function, without pecuniary profit in any degree to the corporation or agency, or whether, though the undertaking may partake of a governmental function, it also embraces a private or proprietary interest.   Many examples of this nature will be found in operations of municipal corporations where the acts performed, though in their nature governmental, also involve private or proprietary interests of the municipality.   1 Dillon, Mun. Corp. (4th ed.) § 66; *Piper v. Madison,* 140 Wis. 311, 122 N. W. 730; *Mulcairns v. Janesville,* 67 Wis. 24, 29 N. W. 565.

As said in respondent's brief, the same agency may have a twofold function. ˙ Part may be governmental in its nature, and part private in its nature. ˙ For example, in *Scott v. Univ. of Mich. A. Asso.* 152 Mich. 684, 116 N. W. 624, it was held that, while it is a governmental function to run a university, when a department of the university ran a foot-

ball game for profit a corporate or private function was being exercised. And in many of the cases cited by respondent involving actions against agricultural associations it will be seen that such associations were organized under statutes which conferred private as well as public functions, but under our statutes applicable to the present suit there is no private or proprietary right whatever conferred upon the board. All the revenues derived belong to the state and are under control of the state treasurer.

Counsel for respondent relies upon *Arnold v. State*, 163 App. Div. 253, 148 N. Y. Supp. 479, and *Platt v. Erie Co. Agr. Soc.* 164 App. Div. 99, 149 N. Y. Supp. 520. In the former case the injury was occasioned by an automobile race, and in the latter by an aeroplane flight. It appears that the New York statute which applies to these cases provides that the state shall be liable for injuries caused by the negligence of its agents, and so the rule that when a board is engaged in carrying on a governmental agency it is not liable for negligence is modified by statute in New York so far as applicable to these cases at least. In the instant case the board was carrying on a purely governmental function in giving the fair with an aeroplane exhibition, therefore was not liable for the negligence of its members, agents, or officers. *Apfelbacher v. State, ante,* p. 565, 152 N. W. 144; *Bernstein v. Milwaukee,* 158 Wis. 576, 149 N. W. 382; *Hayes v. Oshkosh,* 33 Wis. 314; *Higgins v. Superior,* 134 Wis. 264, 114 N. W. 490; *Engel v. Milwaukee,* 158 Wis. 480, 149 N. W. 141; *Manske v. Milwaukee,* 123 Wis. 172, 101 N. W. 377; *Folk v. Milwaukee,* 108 Wis. 359, 84 N. W. 420; *Kuehn v. Milwaukee,* 92 Wis. 263, 65 N. W. 1030; *Liermann v. Milwaukee,* 132 Wis. 628, 113 N. W. 65; *Bruhnke v. La Crosse,* 155 Wis. 485, 144 N. W. 1100; *Evans v. Sheboygan,* 153 Wis. 287, 141 N. W. 265; *Kempster v. Milwaukee,* 103 Wis. 421, 79 N. W. 411; *Eastman v. Meredith,* 36 N. H. 284; *Hill v. Boston,* 122 Mass. 344; *Brinkmeyer v. Evansville,* 29

Ind. 187; *Finch v. Board of Ed.* 30 Ohio St. 37; *Maxmilian v. Mayor,* 62 N. Y. 160.

2. The public corporation not being liable for the reasons before stated, the members constituting it cannot be charged with liability unless it be shown that they were guilty of such misconduct in the discharge of their duties as would render them liable as individuals. *Conroy v. Lowe,* 120 Wis. 151, 97 N. W. 942; *Williams v. Dean,* 134 Iowa, 216, 111 N. W. 931; *Templeton v. Beard,* 159 N. C. 63, 74 S. E. 735; *Lampert v. Laclede G. L. Co.* 14 Mo. App. 376; Mechem, Pub. Off. (ed. 1890) §§ 612–615.

The official proceedings of the board put in evidence show that the fair was held by the board as a public corporation. A resolution was duly passed providing for the giving of an aeroplane exhibition in connection with the fair. A contract was made on the 30th day of May, 1910, between the Wright Bros. of Dayton, Ohio, of the first part, and the Wisconsin state board of agriculture of the second part. The contract was signed on the part of the board by its president and secretary and provided specifically for the flights to be made and the amount to be paid therefor, and provided that "the party of the second part agrees to furnish the entire infield of the race track, free from all obstructions and in as level and flat condition as is possible." The first party agreed to furnish the aeroplane fully equipped and in charge of a competent aviator. The aeroplane fully equipped in charge of a competent aviator was furnished and the board prepared the infield in accordance with the agreement. There were two race tracks, a half-mile track in the center and a mile track on the outside. The infield was in the half-mile track. It is without dispute that the aviator furnished to give the exhibition was one of the best known. The five appellants who were held liable below violated no duty to the plaintiff nor to the public respecting the performance of the contract between the board and Wright Bros., nor did they assume to direct the

aviator in making the flights, and, so far as the evidence shows, had no knowledge whatever of aviation. Moreover, each had his own duties to perform, which did not include control or management of making the flights or directing from what place the ascent should be made. The whole matter of making the flights was properly left to the aviator. While the infield was prepared for the aeroplane exhibition the contract did not provide that the ascent should be made from the infield. The exhibition was left wholly to the aviator, and he made the ascent from the mile track in front of the grand stand or bleachers. Three successful flights were made on Tuesday, Wednesday, and Thursday, the aviator starting on the mile track and making the descent upon the infield on the space cleared. On Tuesday, Wednesday, and Thursday the machine was started at the south end of the south bleachers and started in a northerly direction, the wind being from the north, but on Friday the wind shifted and was blowing from the south and the aviator started the machine in a southerly direction. It rose about thirty feet and finally settled down at a point near the southerly end of the grand stand and struck the plaintiff. Just what caused the aeroplane to descend at the time and place of injury is not clear from the evidence.

The jury found that there was no negligence on the part of the aviator in handling the machine. The aviator, Hoxey, was one of the celebrated aviators of Wright Bros.' concern. It is difficult to see how any of the defendants could be guilty of negligence if Hoxey was not. He had full charge and control of the machine and selected the place to start, and of course the defendants who knew nothing about the art would not attempt to dictate to him how to handle the machine. The defendants were charged with no duty to advise or control the handling or management of this machine. The charge of negligence is that the defendants permitted and directed that the aeroplane should be caused to rise not from the infield, but from the mile track in front of the grand

stand, which was exceedingly dangerous. The aviator stated that the danger was in alighting and so he wanted the infield kept clear for that purpose, but he stated that the mile track was the best place to start the machine. There is no evidence that defendants or any of them directed or controlled in any way the operations of Hoxey in handling the machine. The mere fact that some of the defendants were present and witnessed the flights and failed to object to the ascent from the mile track did not constitute actionable negligence on their part. They were charged with no duty to control the management of the machine or direct that it be started from the infield.

There is not a particle of evidence of any misfeasance on the part of the defendants, hence they cannot be held individually liable. *Bassett v. Fish,* 75 N. Y. 303; *Young v. Comm'rs of Roads,* 2 Nott & McC. 537; *Walsh v. Trustees,* 96 N. Y. 427; *Brown v. West,* 75 N. H. 463, 76 Atl. 169; *Donovan v. McAlpin,* 85 N. Y. 185; *Bright v. Murphy,* 105 La. 795, 30 South. 145.

We are of opinion that upon the undisputed evidence no case was made against the appellants.

*By the Court.*—The judgment is reversed, and the cause remanded with instructions to dismiss the complaint.

BARNES, J., dissents.