TRI-STATE FAIR *v.* MRS. SUSIE ROWTON (Two Cases).

(*Jackson.*    April  Term,  1918.)*

1. **CERTIORARI. Matters reviewable.**

Where court of appeals reversed judgment for plaintiff, but held that the evidence warranted verdict, defendant cannot claim in supreme court, on *certiorari* by plaintiff, that evidence did not sustain verdict, where it has filed no petition for *certiorari.* (*Post, pp.* 306-308.)

Case cited and approved: Cincinnati, etc., R. Co. v. Brock, 132 Tenn., 477.

2. **AGRICULTURE. State fair associations. Liability for negligence. ''Charitable enterprise.''**

A state fair association organized under general incorporation laws (Acts 1875, chapter, 142, section 1, par. 4; Shannon's Code, section 2513 [5]), although not for profit, is not a charitable enterprise and is liable for injuries occasioned by negligent maintenance of grand stand. (*Post, pp.* 306-308.)

Acts cited and construed. Acts 1875, ch. 142, sec. 1.

Cases cited and approved: Gamble v. Vanderbilt University, 138 Tenn., 616; Logan v. Agricultural Society, 156 Mich., 537; Scott v University Athletic Ass'n, 152 Mich., 684.

Case cited and distinguished: Gartland v. N. Y. Zoological Society, 135 App. Div., 163.

Code cited and approved: Sec. 2513 (S.).

3. **AGRICULTURE. State fair association. Liability for negligence.**

A state fair association organized under Acts 1875, chapter 142, section 1, par. 4; Shannon's Code, section 2513 (5), is not exempt from negligent acts on the ground that it is clothed with immunities claimable by State and governmental agencies, although it receives appropriations from the State. (*Post, pp.* 308-313.)

*Authorities passing on the question of conducting state fair or exposition as an exercise of governmental or private function respecting liability for injury to patrons, are collated in a note in L. R. A. 1915E, 469.

Tri-State Fair v. Rowton.

Cases cited and approved: Morrison v. Fisher, 160 Wis., 621; Lane v. Minnesota Agrl. Soc., 62 Minn., 175; Berman v. Minnesota State Agrl. Soc., 93 Minn., 125; Dum v. Agricultural Soc., 46 Ohio St., 93.

FROM SHELBY.

Appeal from the Circuit Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.— HON. BEN. L. CAPELL, Judge.

LEE WINCHESTER, for plaintiff in error.

WILSON & ARMSTRONG, for defendant in error.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

The first of these suits was instituted by Mrs. Rowton to recover of the Tri-State Fair, a body corporate, for personal injuries sustained by her while she was attending a fair held by the defendant, and the second action is that of her husband for the loss of her services. Both plaintiffs recovered judgments, based on favorable verdicts, in the circuit court, but ·in the court of civil appeals, on appeal, the judgments were reversed and the actions dismissed. Petitions for writs of *certiorari* to bring under review the rulings of the appellate court have been granted by this court.

The actions are predicated upon negligence of the' fair association in allowing a grand stand used by it

to fall into disrepair, with result that a rotten plank in the floor on which Mrs. Rowton was standing broke, and personal injuries were suffered by her. Both plaintiffs had paid the fee charged for general admission, and also the fee charged for reserved seats in the grand stand and from which they witnessed the automobile races and airplane flights which were features of the day.

There was evidence warranting the verdicts, the court of civil appeals holds, if the defendant was subject to the ordinary rules of liability for torts. The defendant association, however, endeavors to renew in this court its insistence in the two lower courts that Mrs. Rowton was guilty of proximate contributory negligence, but the effort is ineffectual, since the defendant has filed no petition for *certiorari,* assigning as error this ruling of the appellate court. *Cincinnati, etc., R. Co.* v. *Brock,* 132 Tenn., 477, 178 S. W., 1115, and cases cited.

The court of civil appeals was of opinion that the defendant was a corporation so far conducting a charitable enterprise as not to be liable to respond for the negligence of its officers and employees. It therefore becomes necessary to ascertain the powers and duties of defendant under the charter granted it by this state. It was organized under the provisions of the general incorporation laws (Act 1875, chapter. 142, section 1, par. 4; Shannon's Annotated Code, section 2513 (5) as a corporation for general welfare, and not for profit; and was given power to hold and

sell real estate, to establish by-laws, rules, and regulations, to appoint subordinate officers and agents, to compensate officers, to borrow money to improve its buildings. The board of directors, it is stipulated, shall determine what amount of money shall be paid as a prerequisite to membership, and directors are to be elected by the members. The members "are not stockholders in the legal sense of the term, and no dividends or profits shall be divided among the members;" and the members may, at any time, voluntarily dissolve the corporation by the conveyance of its assets to any other corporation holding a charter from this State for purposes not of individual profit. The means, assets, and income of the corporation shall not be employed "for any other purpose whatever than to accomplish the legitimate objects of its creation." The entire corporate property shall be liable for the claims of creditors.

The defendant has but one salaried officer, its secretary.

(A) Is the defendant entitled to immunity from liability for the negligence of its agents on the ground that it is a corporation engaged in a work of charity? We answer in the negative.

(a) The first insistence of the defendant is that it must be deemed to be a public charity, since it is a corporation organized and operated for the promotion of public welfare, and not for the private profits of its members.

The fact that private profit is excluded is not the true test of a charitable corporation or of the grant of the immunity here asserted. The defendant's charter was obtained under the sections of the Code which provide for the organization of general welfare corporations, it is true; but those provisions are broad enough to include gun clubs, gymnasium clubs, boards of trade, and 'other associations which are yet more patently not charitable in their nature or purposes, and it cannot be soundly argued that the claimed immunity from liability for negligence may be invoked by all of these. If the test proposed by defendant were the determinative one, the case of *Gamble* v. *Vanderbilt University,* 138 Tenn., 616, 200 S. W., 510, was incorrectly decided, since the university was a corporation for public welfare, and notwithstanding that fact it was held liable.

(b) On the contrary, the *Gamble Case* demonstrates that the immunity is not always grantable to a corporation which is, broadly speaking, one which administers charity;. the true test being whether in the given case it may be deemed to be acting in the promotion of its charitable design.

In the pending case there appears no gift of a founder for the perpetual distribution of bounty to beneficiaries. The chief sources of income for the conduct of the association's business are in receipts from admission fees, charges made for concessions, and entrance fees to exhibitors. It is true that business men of the city of Memphis make donations to-

wards the defendant's current expenses, from time to time, as motives of patriotism or self-interest may prompt, and this fact appears to be unduly stressed by the court of civil appeals as a factor deflecting its ruling in favor of the fair association.

. The strongest argument in defendant's behalf is that its mission is' educational, and therefore that it must be treated as a public charity. It appears that exhibitions of live stock, farm products, handicraft, machinery, etc., are among the purposes of the association, and such do doubtless tend in one sense to educate or instruct certain members of the public. But, so also do many other promotions along the line of athletics, theatricals, etc. The primary object, however, is not to educate but to amuse and afford recreation.

In the case of *Gartland* v. *N. Y. Zoological Society*, 135 App. Div., 163, 120 N. Y. Supp., 24, an effort to escape liability for tort was made by an association organized for the purpose of furnishing instruction and recreation to the people in the maintenance of an aquarium which should be open to the public, without charge or gratuity, on a portion of each day. It was there said:

"To avoid liability, the appellant claims, first, that it is a charitable corporation and not liable in an action of this kind. . . . We should have great difficulty in determining that this corporation, under its act of incorporation, its enabling act, and its contract with the city, was a charitable organization

within the classification of any of the corporations which, from time to time for one reason or another, have been relieved of responsibility for the torts of their employees. It dispenses no alms; it relieves no suffering; it cares for no sick. While it is true it is not a money-making institution" and its managers and members may not receive salaries or any monetary returns, "this is not controlling. Its purposes and its work are to amuse and to instruct, and, if we were called upon to classify it, we should say that it came closer to an institution for recreation with incidental education than any other recognized classification."

In *Logan* v. *Agricultural Society,* 156 Mich., 537 121 N. W., 485. a fair association was held not to be a charitable or eleemosynary institution and not to be free from liability for a tort which was a counterpart of the one involved in the pending suits. See, also, *Scott* v. *University Athletic Ass'n,* 152 Mich., 684, 116 N. W., 624, 17 L. R. A. (N. S.), 234, 125 Am. St. Rep., 423, 15 Ann. Cas., 515.

The appellate court pressed the doctrine of immunity from tort liability to an unwarranted extent.

The corporate purpose of the defendant was not to make money for its members, but it was to make money for itself to be used in carrying forward and enlarging its enterprise. This could only be done by inducing the public to patronize its exhibitions, and when members of the public attend they are entitled to demand the exercise of ordinary care on the part

of. the association in the keeping safe of such grand stands as its officers may see fit to provide. If the rule of immunity were applied in the circumstances here appearing, a corporation created for public welfare might become one for public detriment, should its negligence go to the point where a grand stand was permitted to become so insecure as to fall causing the deaths of a large number of spectators.

The income of the defendant, especially from admission fees, should be held to accrue subject to the risks of the negligent management of the corporate agencies which affect the patrons who furnish the lifeblood of the institution in the payment of those fees.

(B) Is defendant to be held not liable on the ground that it was discharging a duty imposed solely for the benefit of the public, and therefore was clothed with the immunities claimable by the state and governmental agencies?

It appears that the defendant association received appropriations towards its support of $10,000 per annum from the State of Tennessee for several years, prior to and including the year of the accident in question; and upon this fact, combined with the general welfare scope of the corporation, is based the argument that the association is not subject to the rule of respondeat superior.

It is the settled rule that where the legislature of a State constitutes a state board of agriculture or a board of managers an agency of the State and

devolves directly upon them the duty of conducting a State fair, there is so far exercised by them a governmental function that the institution is not liable for injuries sustained as a result of negligence of officers or employees. *Morrison* v. *Fisher,* 160 Wis., 621, 152 N. W., 475, L. R. A., 1915E, 469, and several cases cited in the opinion and note.

But we have no such case before us. We deal with a corporation brought into existence at the volition of the incorporators; the State has not undertaken to name the members of a board to exercise any imposed governmental function belonging to it. The control of the affairs of the defendant association as to admission fees, choice of officers and servants was in the hands of a board of directors named by its own members; these directors had the power to purchase ground and erect new structures, or to lease an existing fair ground with defective structures, as it chose to do, and to repair the same or not. No state official had power to direct in those regards. The association may dissolve at the will of its members, and the State would not receive its property or have any claim against it or the corporation's property in the absence of a contract so providing. The distinction is clearly and properly made in two Minnesota cases; the one dealing with and holding liable a voluntary, state-aided fair association (*Lane* v. *Minnesota Agric. Soc.,* 62 Minn., 175, 64 N. W., 382, 29, L. R. A., 708), the other with the same society after the legislature had by subsequent

enactment made it in effect a department of the State government (*Berman* v. *Minnesota State Agric. Soc.*, 93 Minn., 125, 100 N. W., 732).

See, also, *Dunn* v. *Agricultural Soc.*, 46 Ohio St., 93, 18 N. E., 496, 1 L. R. A., 754, 15 Am. St. Rep., 556; *Gartland* v. *N. Y. Zoological Society*, supra; in each of which, though the State or city aided the corporation, the holding was against the claim of immunity here advanced.

We have no difficulty in following these decisions. The immunity awarded the State and State agencies should not shield an institution which the State does not control, and which came into existence at the volition of its incorporators, not of the legislature. For the liabilities of such the State is not liable in law or morals.

The result of our consideration of the causes is that we are not satisfied with the judgments of the court of civil appeals. Reversed, with judgments here affirming those rendered in the circuit court.