LIZZIE WILLIAMS, Appellee, v. H. L. DEAN ET AL., Appellants.

**Correction of court records:** JURISDICTION. A judge while holding court in one county has no jurisdiction, in the absence of agreement, to make an order correcting the court records of another county, even on notice.

**Agricultural societies:** POWER TO CONDUCT GAMES. A fair Association organized as a County Agricultural Society has power to conduct ball games and such other lawful sports as its directors may determine upon.

**Same:** PERSONAL INJURY: LIABILITY OF DIRECTORS. The directors of an Agricultural Society are not personally liable to a patron of a ball game conducted by the society, who is injured by a wild ball, upon a mere showing of insufficient screens to protect spectators. There must be proof of misfeasance on the part of the directors and then only those who participated in the wrongful act are liable.

*Appeal from Cedar District Court.*— HON. B. H. MILLER, Judge.

TUESDAY, MAY 7, 1907.

ACTION at law to recover damages from defendants, who are the board of directors of a county agricultural society, for injuries received by plaintiff in being struck with a baseball, while standing in the amphitheater or grand stand of the society for the purpose of watching the races then in progress. Defendants' demurrer to the petition was overruled, to which they excepted and they thereupon answered, denying the allegations of plaintiff's petition, deny-

ing liability for any act done, and pleading assumption of risk and contributory negligence upon the part of plaintiff. Upon these issues the case was tried to a jury, resulting in a verdict for plaintiff, and defendants appeal.— *Reversed.*

*France & Rowell, Wright, Leach & Wright,* and *Grimm, Trewin & Moffit,* for appellants.

*Charles W. Kepler & Son,* for appellee.

DEEMER, J.— Attached to defendant's motion for a new trial is an affidavit showing beyond all question that the verdict in this .case was a quotient one. Appellee says, however, that after the case was tried the judge who heard it, while holding court in another county, upon a. motion to correct the record, of which defendants had due notice, struck out his affidavit and made an order declaring that it was not attached to the motion when that pleading was presented to and ruled upon by him. While acting in another county the judge was not the district court of Cedar county. He was simply a judge and as such had no power to correct the records of the district court in another county even upon notice. This is fundamental. *Whitlock v. Wade,* 117 Iowa, 153; Code, sections 242, 243, 247. There was no agreement to submit the matter in vacation and no agreement that the matter should be heard by the judge. Hence we must accept the record as it stands with the affidavit attached showing a quotient verdict. As the verdict was of that kind, the trial court should have set it aside. *Sylvester v. Town,* 110 Iowa, 256; *Denton v. Lewis,* 15 Iowa, 301. This disposes of the case but, as it must be retried and as the. points involved are argued and rather intricate, it is deemed advisable to indicate our views upon the propositions presented in argument and likely to arise in the future.

1. CORRECTION OF COURT RECORDS: jurisdiction.

II.   The defendants are the officers and directors of the Tipton Fair Association, a corporation organized under the law (Code, sections 1642, 1647) as a county agricul-

**2. AGRICULTURAL SOCIETIES: power to conduct games.** tural society for the purpose of holding county fairs.   The society constructed a race track for the purpose of having races, and, in order that the people might better observe them, had erected an amphitheater or grand stand in close proximity to the track.   Inside the track it had laid out a baseball ground; the "home plate" being about eighty-eight feet from the inside of the track and about one hundred and forty-five feet from the grand stand.   The pitcher's box was located so that the pitcher delivered the ball to the batsman in the direction of the grand stand.   Fifty-four feet from the "home plate," and between it and the grand stand, a wire screen had been constructed by some one, sixteen feet long and twelve feet in height, to stop such balls as went by the catcher and to protect those who were in the rear of the catcher.   There was no screen in front of the grand stand and no other protection to its occupants than the screen just mentioned.   Plaintiff testified as follows:   "I went to see the horse racing; bought a ticket at the gate; and, when we got into the grounds, we went into the amphitheater.   We wanted to get a seat and sit down because I was sick and tired.   We paid to get in.   When I got into the amphitheater, I thought I was safe there.   I cannot tell how many women and children were occupying seats in the amphitheater.   I didn't want to see the ball game.   I went to see the races.   I never looked at the ball game."   She further testified that she could not see the ball game because of the position of the judges' stand which had been erected inside the race track, and that, while she was standing in the grand stand, a ball was thrown or batted by one of the players back into the grand stand, which struck her on the left breast, causing serious and permanent injury.

The negligence charged against the defendants is the

employment of base ball teams to play a game of ball so near the amphitheater, without furnishing sufficient and ample protection to the occupants from batted or thrown balls. The fair association was not made a party, and the serious question in the case is the liability of its officers and directors, defendants herein, in the event there was liability upon the part of any one. The trial court submitted the case to the jury upon the theory that defendants' liability depended upon whether or not they were authorized by law to permit a baseball game upon the grounds of the society, instructing in effect that, if they were not so authorized, then they were liable, otherwise they would not be. If further instructed, as we understand it, that the officers had no authority to permit the playing of baseball upon the grounds of the society, and that, while the game itself was not unlawful, defendants were obliged to use reasonable and ordinary care to protect the occupants of the grand stand from all dangers incident to the playing of the game in proximity thereto, and left it to the jury to say whether or not they used such care. In this there were, as we think, several errors. By section 1658 of the Code Supplement of 1902, in force when plaintiff received her injuries, it is provided that " county or district agricultural societies may annually offer and award premiums for the improvements of stock, tillage, crops, implements, mercantile fabrics, articles of domestic industry, and such other articles and improvements as they may think proper, and so regulate the amount thereof and the different grades, as to induce general competition." And by section 1661a of the same supplement it is provided that " any county or district agricultural society, upon filing with the auditor of state, affidavits of its president, secretary and treasurer, showing what sum has actually been paid out during the current year for premiums, not including races or money paid to secure games or other amusements,  . . . shall be entitled to receive from the State treasury,  . . . in no case   . . .   to exceed the sum of $200.00."

The general rule as to all corporations is that they have such powers " as are expressly provided in the articles of incorporation and such others as are reasonably incident to the exercise of such powers." This is in part a quotation from *Bathe v. Society*, 73 Iowa, 11, wherein the powers of an agricultural society were involved. In *Delier v. Plymouth Agri. Soc.*, 57 Iowa, 471, it was held that such societies were authorized to offer premiums for trials of speed; in other words, to authorize horse racing. Under the provisions of the statutes quoted, we think the society had power to authorize any such lawful games or amusements as its officers and directors might in their discretion see fit to employ or engage for the edification or entertainment of its patrons. These societies are created and exist, not only for educational purposes, but to furnish the people with harmless amusement and entertainment. Recreation and relaxation are quite as important sociologically as education and instruction, and, so long as this is provided along proper lines, they cannot be said to be without the corporate powers of agricultural societies. See, as sustaining this view, *Berman v. State Society*, 93 Minn. 125 (100 N. W. 732; *Knottnerus v. North Park Co.*, 93 Mich. 348 (53 N. W. 529, 17 L. R. A. 726).

The trial court was in error in submitting the case on the theory it did and in saying to the jury in effect that the defendants had no right to authorize or permit the playing of a baseball game upon the grounds of the society. We shall assume that it was the duty of the society itself to use ordinary and reasonable care to protect all persons rightfully upon its grounds from all dangers incident to the playing of the game. That question is fully covered by our recent case of *Williams v. Mineral Park Co.*, 128 Iowa, 32, which is thoroughly and exhaustively annotated in 1 L. R. A. (N. S.) 427. Whether or not the society itself may be held liable for failure to exercise this degree of care on account of its being a sort of arm or branch of the State is not in-

volved in this case, and it is not now decided. But, aside from this question, had the society been a party, it would have been a question for the jury to determine whether or not it was negligent in permitting the game to take place where it did.

We have yet to determine the liability of the defendants, who are the officers and directors of the society. The action sounds in tort, and is manifestly for trespass or

3. SAME: personal injury: liability of directors.

perhaps trespass on the case. Defendants were, of course, agents of the society. They were not the society itself; but were acting purely in a representative character. If liable at all, it is because of what they did. If they were guilty of some misfeasance or trespass as distinguished from mere nonfeasance, then they were and are liable, and they cannot shield themselves by saying that they were acting as agents for the society. And in this connection it is entirely immaterial whether their acts were *ultra vires* or within the scope of their authority. No one is permitted to say in an action against him for trespass or for misfeasance that he was acting as an agent in doing the matters complained of and is therefore not liable. Nor is his liability to be measured by the extent of the authority conferred upon him. On the other hand, no agent is liable to a stranger simply for nonfeasance; that is to say, for failure to do some act which his principal commits to his care. He may be liable for breach of contract to his principal, but not to a stranger for a tort. These views are stated with great force and perspicuity in *Murray v. Usher,* 117 N. Y. 542 (23 N. E. 564), and *Cincinnati Ry. Co. v. Robertson,* 115 Ky. 858 (74 S. W. 161). That the same rule applies to officers and directors of corporations, see 3 Thompson on Corporations, sections 4090, 4091, 4096, *et seq.; Bruff v. Mali,* 36 N. Y. 200; *Salmon v. Richardson,* 30 Conn. 360 (79 Am. Dec. 255). Nonfeasance is the nonperformance of some act which ought to be performed and misfeasance is the performance of an act in an improper

manner, whereby some one receives an injury. *Illinois Cent. R. R. v. Foulks,* 191 Ill. 57 (60 N. E. 890). So that as defendants may only be held liable for misfeasance, and can only be held liable for the negligent performance of some act which they undertook to perform, it must be shown before they can be held liable that such ones as are sought to be charged did some thing in a negligent or improper manner. Only those who participated in the act can be held, for they were not partners in the transaction, and no one is to be held liable for what another did without his direction or authority. Some knowledge of and participation in the wrongful act must be brought home to the party to be charged. See *Arthur v. Griswold,* 55 N. Y. 400; *Joint-Stock Co. v. Brown,* L. R. 8, Eq. 281, 402; *Hewett v. Swift,* 3 Allen (Mass.) 420. The only showing in the case as to defendants' responsibility is that they were officers and directors of the society, and that the management of the fair association was in the hands of the directors. Manifestly this was not enough to hold defendants liable for misfeasance, as that term is used in the books.

One other question is argued which does not seem to arise upon the record, and that is defendants' liability for the acts of the ball players or for their negligence either in playing the game or in not providing screens so that people in the grand stand might be protected. There is not enough in the record to justify any definite pronouncement upon this proposition. There is a rule which exonerates an intermediate servant where an injury has been committed by a subordinate one under circumstances which make the immediate actor and the ultimate principal liable. This is illustrated by the following cases: *Stone v. Cartwright,* 6 T. R. 411; *Bacheller v. Pinkham,* 68 Me. 253; *Bianki v. Greater Am. Exp. Co.,* 3 Neb. (Unof.) 656 (92 N. W. 615); *Brown v. Lent,* 20 Vt. 529. Not enough facts are disclosed to enable us to say whether or not this rule is applicable to the case. We refer to it in view of the arguments of counsel

and of a new trial.   Of course, if the defendants authorized the wrong or in some manner participated in it, then, so far as this feature of the case is concerned, the rule just announced has no application.   See cases hitherto cited and *Bath v. Caton,* 37 Mich. 199.   Also the many cases cited in the note to 1 L. R. A. (N. S.) 427, *supra.*

Having now covered the entire case, we reach the conclusion that the trial court was in error in the respects mentioned, and the judgment must, and it is, *reversed.*