R. H. CARSWELL, as Tax Collector of Duval County, v. STATE, *ex rel.* W. F. MARLOWE.

159 So. 15.

Opinion Filed January 10, 1935.

Petition for Rehearing Denied February 15, 1935.

*Austin Miller* and *Emmet Safay,* for Plaintiff in Error; *W. McL. Christie,* for Defendant in Error.

BUFORD, J.—Marlowe filed proceedings in mandamus against the tax collector of Duval County to coerce the tax collector to collect the occupational license tax from all persons operating certain "automatic vending machines, knife racks, cane racks, ball games, clairvoyants, fortune tellers, automatic games, devices, merry-go-rounds, restaurants, cafes, and public eating saloons, slot machines, shooting galleries, and places for the sale of beer" on what is known as the Fair Grounds in the nortwest portion of the City of Jacksonville, Florida, on the 9th, 10th, 11th, 12th, 13th, 14th, and 15th days of April, 1934. Alternative writ issued. The alternative writ commanded:

"The said R. H. Carswell as Tax Collector of Duval County, Florida, to forthwith collect the licenses required by law to be taken out by such persons, and in default thereof to seize and sell the property so used in the giving of such exhibitions and performances and the operation of

such businesses, or that you show cause why you have not done so before this Court on the 10th day of April, A. D. 1934, at 11:00 A. M."

Answer and return was filed. Motion to quash answer and return was sustained and thereupon amended answer and return was filed in the following language:

"(1) Respondent denies and says that it is not true that the relator is a taxpayer of Duval County, Florida.

"(2) Respondent admits and says that it is true that the respondent is the duly elected, qualified and acting Tax Collector of Duval County, Florida.

"(3) Respondent denies and says it is not true that E. J. Velare and Carl Sedlmayr did on, to-wit, the 7th and 8th days of April, A. D. 1934, engage in the business of giving exhibitions and performances within the tents or temporary structures in the City of Jacksonville, Duval County, Florida.

"(4) Respondent denies and says it is not true that said persons did also maintain and operate certain automatic vending machines, knife racks, cane racks, ball games, clairvoyants, fortune tellers, automatic games, devices, merry-go-rounds, restaurants, cafes and public eating saloons, slot machines, shooting galleries and places for the sale of beer.

"(5) Respondent denies and says it is not true that said persons intend to again on, to-wit, the 9th, 10th, 11th, 12th, 13th, 14th, and 15th day of April, A. D. 1934, engage in said businesses.

"(6) Respondent denies and says it is not true that said persons have engaged in said businesses and intend to again engage in said businesses on the dates hereinbefore specified, at and within the City of Jacksonville, Duval County,

Florida, at a place known as 'The Fair Grounds' or elsewhere in said County.

"(7) Respondent denies and says it is not true that said persons have used and intend to again use certain tents, chairs, benches, desks, counters, machinery and other personal property now situated in the City of Jacksonville, Duval County, Florida, at the location aforesaid.

"(8) Respondent denies and says it is not true that said property is subject to seizure and sale by the respondent tax collector to enforce the payment of the license taxes.

"(9) Respondent admits that relator has requested respondent to collect taxes upon said property or to seize and sell the same.

"(10) Further answering said alternative writ, respondent says that Duval County Fair and Exposition Association, Inc., a corporation not for profit, organized for the purpose of operating public fairs and expositions under the terms and provisions of Chapter 7388 of the Acts of the Legislature of the State of Florida of 1917, being Sections 6516 to 6526, both inclusive, of the Compiled General Laws of Florida, did on the 7th day of April, A. D. 1934, begin holding its annual Fair at the Fair Grounds in the City of Jacksonville, County of Duval and State of Florida, said Fair to continue through the 15th day of April, A. D. 1934, and that all and singular the exhibits, performances, shows, games, rides, concessions and other endeavors mentioned in the said alternative writ of mandamus are the property of and being operated exclusively by and as the property of the said Duval County Fair and Exposition Association, Inc., and not otherwise, and are being operated by it in connection with the agricultural, horticultural, live-stock and other exhibits, as is usual and customary in connection with the holding of Fairs, for the

purpose of attracting persons to view the agricultural, horticultural, live-stock and other exhibits and creating interest therein for the purpose of assisting in paying of the expenses of the non-income producing exhibits and thereby enabling the Association to carry on its endeavors to benefit and develop the agricultural, horticultural, live-stock and other resources of the State, and are being used exclusively for the legitimate purpose of the Association and that, therefore, being so used, the said endeavors are exempt from all forms of taxation.

"(11) Further answering the said alternative writ of mandamus respondent says that upon the relator's requesting him to collect license taxes for the operation of the said several endeavors in the said writ mentioned, the respondent thoroughly investigated the matter, found the facts to be as above set out, sought legal advice in the premises and determined that the same were exempt from all forms of taxation and therefore respondent says that he is without lawful authority to enforce the payment of any taxes whatsoever of and from the said Duval County Fair and Exposition Association, Inc., the holder and operator of the Fair and several undertakings in the said writ mentioned."

Motion was made to strike paragraphs 3, 4, 5, 6, 7, 8, 10 and 11, and was granted as to paragraph 11, of the amended answer and denied as to other paragraphs.

Testimony was taken and thereafter motion for peremptory writ resulted in a judgment as follows:

"This cause coming on this day to be heard upon the alternative writ of mandamus heretofore issued herein, and the amended answer and return thereto of the respondent, and the Court having heard the testimony of the parties and argument of counsel for the respective parties,

and the Court being fully advised of its judgment in the premises, it is thereupon,

"CONSIDERED, ORDERED AND ADJUDGED by the Court that the alternative writ of mandamus herein be and the same is hereby made perpetual and final and that the respondent do pay all costs of this proceeding.

"IT IS FURTHER ORDERED AND ADJUDGED that the clerk of this court is hereby directed to issue peremptory writ of mandamus herein, commanding the said respondent, R. H. Carswell, Tax Collector of Duval County, Florida, to forthwith collect from the persons who did, on, to-wit, the 7th and 8th day of April, A. D. 1934, engage in the business of giving exhibitions and performances within tents or temporary structures in the City of Jacksonville, Florida, and who did maintain and operate certain automatic vending machines, knife racks, cane racks, ball games, clairvoyants, fortune tellers, automatic games, devices, merry-go-rounds, restaurants, cafes and public eating saloons, slot machines, shooting galleries and places for the sale of beer, at and within the City of Jacksonville, Duval County, Florida, at a place known as the 'Fair Grounds' in the northwest portion of the City of Jacksonville, the licenses required by law to be taken out by such persons for the giving of such exhibitions and performances and the operation of such businesses, or that in default thereof that he do seize and sell as required by law, the tents, chairs, benches, desks, counters, machinery and other personal property used in the giving of such exhibitions and performances and operating such businesses."

A consideration of the pleadings and the evidence reveals that the question for our consideration is, "where an association not for profit organized under the provisions of Sections 6516 to 6526 C. G. L. of Fla. conducts a public

fair in a county of this State (in this case Duval County) for the benefit and development of the agricultural, horticultural, live-stock and other resources of the State of Florida, and said sections expressly exempt all property and money of the association used by it for the legitimate purposes of the association from all forms of taxation, and the association as a means of paying the necessary operating expense of the public fair, including prizes and premiums to be awarded to the exhibitors, acquires and operates amusements and other attractions in connection therewith, are these amusements and attractions subject to the payment of a license tax?" The sections of the statute above referred to, being also Sections 4517 to 4527 R. G. S., provide for the incorporation not for profit of public fairs and expositions.

Section 4523 R. G. S., 6522 C. G. L., is as follows:

"No member or officer of any association organized under this article shall be personally liable for any of the debts of such association; and no money or property of. any such association shall be distributed as profits or dividends among its members or officers, but all money and property of such association shall, excepting only for the payment of its just debts and liabilities, be and remain perpetually public property, administered by the association as trustee, to be used exclusively for the legitimate purpose of the association, and shall be, so long as so used, exempt from all forms of taxation."

Authority for the imposition of occupational license tax is found in Sections 803, et seq., R. G. S., 1050, et seq., C. G. L.

Section 824 R. G. S., 1080 C. G. .L., provides as follows:

"Persons, firms or corporations operating permanently located amusement parks within which are operated merry-

go-rounds, roller coasters, theatrical and other exhibitions, shows, and performances, shall pay a license tax for the devices, shows, exhibitions and all other forms of diversion and amusement permanently carried on in such parks, one hundred dollars; Provided, that nothing in this section shall be construed so as to apply to associations organized for the purpose of holding annual county fairs."

This appears to be a legislative construction or application of the statute above referred to exempting associations such as this from the payment of license tax. We think, however, that terms of the statute are sufficient to warrant the construction placed thereon by the plaintiff in error in that the statute provides:

"All money and property of such association shall, except only for the payment of its just debts and liabilities, be and remain perpetual public property administered by the association as trustee to be used exclusively for the legitimate purposes of the association, and shall be so long as so used, exempt from all forms of taxation."

It is clear that to require the payment of a license tax by the association will mean to place a tax burden on the money derived by the association for its operations for the purpose for which it was organized. Where this result is found to obtain in analogous cases the weight of authority supports the enunciation that the tax is not applicable and cannot be required.

In 1 R. C. L. 785 the author says:

"Since the function of agricultural societies, as pointed out in the preceding section, is not only educational but also to furnish harmless amusement and entertainment, a 'fair' consists not only of horse racing and the exhibition of live stock and agricultural products, machinery and implements, though these are the chief objects of the society in

holding the fair, but also of all shows, exhibits, and amusements of all kinds recognized and permitted by it to have space upon its grounds. These attractions, no less than the exhibits, constitute a part of the fair."

Again this author says:

"As agricultural societies are chiefly educational in their nature and thereby directly influence the advancement of an industry upon which the public welfare ultimately depends, their purposes are of such vital importance that they cannot be ignored by the State. The administration of such education must be undertaken by the State, either directly through its own departments, a task which would be of considerable difficulty and expense, or by means of availing itself of existing agencies. Consequently, contributions to agricultural societies by the State for the purpose of advancing agricultural interests are perfectly legal, and do not violate the principle that the power of taxation shall be used solely for public purposes. Accordingly, wherever they are provided for by statute, their payment may be enforced by mandamus proceedings in behalf of the society interested."

And on page 784 of the same Volume (1 R. C. L.) it is said:

"Agricultural societies are created to bring together not only those engaged in agrciultural pursuits and the raising of stock, but also the manufacturers of farming implements, of the various articles adapted to use in cultivating the soil and harvesting crops, and of other articles used by the public, * * *. It is not only for educational purposes, however, that these societies are created and exist, but also for furnishing the people with harmless amusement and entertainment; and so long as these are provided along proper

lines, they cannot be said to be without the corporate powers of agricultural societies."

In Morrison v. MacLaren, 160 Wis. 621, 152 N. W. 475, the Supreme Court of Wisconsin said:

"Exhibitions in connection with State Fairs which afford entertainment to the public and will attract crowds to view the agricultural exhibits are within the governmental scope of such exhibitions; hence, the state board of agriculture may engage an aviator to give flying exhibitions."

See also Berman v. Minn. State Agricultural Society, 93 Minn. 125, 100 N. W. 732.

In Williams v. Dean, et al., 134 Iowa 216, 111 N. W. 93, in speaking of agricultural fairs and societies which operate the same the Court said:

"These societies are created and exist, not only for educational purposes, but to furnish the people with harmless amusement and entertainment. Recreation and relaxation are quite as important sociologically as education and instruction and, so long as this is provided along proper lines, they cannot be said to be without the corporate powers of agricultural societies."

It, therefore, appears clear that the courts have recognized the expediency, if not the necessity, which exists demanding that a fair association conducting an agricultural, horticultural and live stock fair shall provide those amusements and attractions which are expected at such places for the purpose of attracting and amusing the crowd and also for the very important purpose of constituting a source from which considerable profits will be derived to meet the necessary expenses incident to the operation of the fair. By this means it is pointed out the fair association may evade the necessity of procuring a large part, if not all, of such necessary funds from appropriations from public

funds. The appropriation of public funds in this regard was approved in the case of Earle v. Dade County, 92. Fla. 432, 109 So. 331.

The question as to whether or not these amusements, games or concessions are needful for the successful operation of the fair from a financial standpoint is a material one and the refusal of the trial court to allow the introduction of evidence touching this point was error. There is no question involved here challenging the legality of the amusements offered or the concessions employed except for the non-payment of the tax and, assuming that they were all proper enterprises to be conducted for the patronage of the public, then it would seem that for the fair association to be denied the right to show its necessity for resorting to such legitimate means to produce money with which to conduct its agricultural, horticultural and live stock exhibitions would be to deny the association the right to prove the very elements which in part justify its conducting these concessions.

Having determined that it was within the province of the fair association to operate these shows and concessions, the only remaining question is whether or not Section 6522 exempts the fair association from the payment of the tax. We might cite many cases supporting the contention of the fair association, but as there is a case directly in point by the Supreme Court of the United States which has been cited by counsel for the plaintiff in error, we take it that the citation of that authority is sufficient to support the position. In Citizens Bank of Louisiana v. Parker, 192 U. S. 73, 48 Law Ed. 346, in which case the Court had for construction a legislative charter granted to a bank which provided, "The capital of said bank shall be exempt from any tax laid by the state, or by any parish or body politic

under the authority of the State, during the continuance of its charter," the effort was to require the banking company, the recipient of the benefits of this Charter Act, to pay the occupational license tax required by another statute relating to a bank or banking company, Mr. Justice Mc-KENNA, delivering the opinion of the Court, said:

"The same question was presented again in State v. Southern Bank, 23 La. 271, upon a license tax imposed by the revenue laws of 1889. The court was urged to overrule New Orleans v. Southern Bank. The court refused to do so and affirmed the doctrine of that case, and held the act violative of Section 10, Article I, of the Constitution of the United States. The Supreme Court of Louisiana, therefore, as early as 1853, construed a provision exempting the capital stock of a bank from taxation except at a particular rate as exempting the bank from a license tax. In other words, it was held that a license tax was virtually a tax on the capital of the banks, and we think that must be held of the tax in the case at bar. Whatever the tax may be called, one on property or one on occupation, if its final incidence is on the capital, it is comprehended in the exemption contained in the charter. As we have already pointed out, the language of the charter is universal; and it was said in Citizens Bank v. Bouny, 32 La. Ann. 239, 'That language is broad enough to cover everything which during its existence, should enter into and make part of the capital of said bank.' If the language is broad enough to preclude a tax upon that which may become part of the capital of the bank, it is broad enough to preclude a tax which may become a burden upon the capital. Whatever diminishes the income of a bank diminishes its capital under the provisions of the charter of 1833. It was said in the Bouny case: 'By the 29th section of the original charter, "all

the profits made by said corporation shall be added to and made a part of its ¨capital" except a certain fraction of any excess of profits over what was necessary to pay the bonds issued by the bank.' And the sum of $159,238.62 accumulated profits were held not to be liable to taxation. And fully as significant was the exemption declared of the sum of $636,450 assessed to the shareholders of the bank as 'value of capital stock.' It was said, 'Even if the shareholders be liable to taxation on their shares (upon which we express no opinion), under the peculiar nature of the charter of the Citizens Bank, we think it cannot be forced to pay the taxes assessed to its shareholders.' In other words, the burden of tax could not be put upon the bank. However, it could be imposed upon the stockholders.

"We may recur to Penrose v. Chaffraiz. It was a proceeding to recover the payment of a tax for the year 1899, imposed upon a certain number of shares of the capital stock of the Citizens Bank held by Chaffraiz. Exemption was asserted under the clause of the bank's charter which we have quoted. This was one of the questions left open by this court in New Orleans v. Citizens Bank, and left open in the Bouny case. The exemption, nevertheless, was sustained. It was recognized that in some jurisdictions, 'including the Supreme Court of the United States,' it was held that the exemption of the capital of a corporation from taxation does not of necessity include the exemption of the shareholders on their shares of stock. But the court considered that it was not necessary to approve or disapprove the doctrine and rejected it as inapplicable to shares in the Citizens Bank because the intent of the Legislature was otherwise. And that intent was deduced 'not only from the words of the charter,' but from the purposes for which the bank was instituted, and they were vividly de-

scribed. Because of them, it was in effect said, and of the bank's relation to them and the State's relation to the bank, the State 'granted the clause quoted above, exempting from taxation.' And it was observed, 'at that time the refined distinction between the capital and the capital stock of a corporation had not been made by the courts, or was at least unrecognized as yet in Louisiana.' We see, therefore, that in the Bouny case it was held that a tax on that which might become capital, or a tax which the bank would have to pay, is illegal. In the Chaffraix case it is held that a tax which falls on the stockholders of the bank is illegal. In other words, the effect of the two cases is that a tax which falls upon the capital or is to be paid by the bank or its stockholders is prohibited. A license tax has surely some one of those effects."

Mr. Justice TERRELL and Mr. Justice DAVIS concur in the views herein expressed.

Mr. Chief Justice WHITFIELD and Mr. Justice BROWN do not entirely concur in the views expressed in this opinion, but both entertain the view that there is grave doubt that there is a clear legal duty resting upon the respondent to require the payment of, and to collect, the tax sought to be enforced in this case and that it has not been made to appear that the relator has a clear legal right to have the performance of the alleged duty coerced by mandamus.

For the reasons stated, the judgment should be reversed. It is so ordered.

Reversed.

WHITFIELD, C. J., and TERRELL, BROWN and DAVIS, J. J., concur.

ELLIS, J., dissents.

ELLIS, J. (dissenting).—Certain persons conducted shows or exhibitions under tents in the City of Jacksonville "at

the location" known as the "Fair Grounds." They also operated other "catch penny" businesses or devices for profit at the same place. It appears that these small occupations were carried on during the same period of time in which the Duval County Fair and Exposition Association, a corporation not for profit organized under Florida laws, carried on its exhibition of agricultural and other products.

The people who are engaged in the above described occupations carry on their businesses at the Fair Grounds under contracts with the Fair Association. Those contracts are called "concessions."

It does not appear that the above mentioned occupations are carried on within the Fair Grounds or within the gates of the inclosed grounds, but on the contrary it is alleged by the alternative writ and admitted by the answer that they are conducted "at a place known as 'The Fair Grounds.'"

The word "at" is not so definite a term as "in" or "on," therefore from the pleadings in the case the above described small occupations are not clearly shown to be carried on or upon or within the "Fair Grounds." Some of them, or indeed all of them, may so far as this Court is informed, be carried on outside the "Fair Grounds" but near thereto, even though upon the property of the "Duval County Fair and Exposition Association."

If the occupations sought to be taxed are in fact carried on outside the Fair Grounds, that is to say, outside the gates of the inclosure, it does not follow that every person who may be attracted by the various forms of recreation, amusement and semi-gambling devices offered by the businesses described would, after or before satisfying his or her desire for the enjoyment which such divertisements afford to them, enter the "Fair Grounds" where they would be required to pay an admission fee at the gates.

Therefore it may not be argued with any degree of accuracy that the presence of any number of amusement seekers attracted by the shows would insure a proportionate increase of gate receipts for the Fair Association. The money derived by the Fair Association from concessions granted for such businesses in such circumstances would constitute its only income from those activities. That consideration takes the matter largely out of the reason which may lie behind a statute exempting the properties of Fair Associations from taxation. It was not the purpose of such statutes to authorize such semi-educational institutions as State and County Fair Associations to set up the business of encouraging, maintaining or operating such occupations as are set out in the alternative writ.

The statutes mentioned in the majority opinion, Sections 6522 and 1080, Compiled General Laws, 1927, are not applicable as exempting the respondents or the Duval County Fair and Exposition Association from occupational taxes in the circumstances disclosed by the pleadings in the case. Section 6522, *supra,* relates to taxes on the money and property of Fair Associations while used and administered by such Associations as trustee of public properties exclusively for the legitimate purpose of the Association. In such case the exemption is as to *ad valorem* taxes and not occupational taxes because such a tax is not a tax on occupations.

Section 1080, *supra,* relates to persons, firms or corporations permanently carrying on amusement parks within which merry-go-rounds, roller coaster, theatrical and other exhibitions, shows and performances, are given and does not apply to associations organized for the purpose of holding annual County Fairs. There is no effort in this case to exact of the Fair Association an occupational tax on such

amusements permanently carried on by the Association within its grounds or parks.

The real parties in interest may not appear in this litigation. However that may be, the purpose of this proceeding is definitely to require the County Tax Collector to collect the occupational tax appropriate under the law from persons carrying on the businesses described in the writ.

I think the judgment of the court should be affirmed.