## OKLAHOMA STATE FAIR AND EXPOSITION v. JONES, Com'r of Internal Revenue.

### No. 872 Civil.

District Court, W. D. Oklahoma.

March 24, 1942.

Rainey, Flynn, Green & Anderson, of Oklahoma City, Okl., for plaintiff.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Edward D. Sharpe and Lester L. Gibson, Sp. Assts. to Atty. Gen., and Charles E. Dierker, U. S. Atty., and George H. McElroy, Asst. U. S. Atty., both of Oklahoma City, Okl., for defendant.

KENNEDY, District Judge.

The plaintiff was assessed for unemployment compensation taxes for the year 1936, which with penalty and interest amounted to $546.33 at the time of payment in 1941. Claiming the tax to have been erroneously levied, a claim for refund was filed resulting in its disallowance and this suit followed in due course. Issues were joined and a trial had to the Court, followed by the tendering of trial briefs after a short oral argument.

The point in controversy is whether the plaintiff in its activities comes within the exemption allowed by the Social Security Act to institutions employing people engaged in operation exclusively for scientific and educational purposes where no part of the net earnings inures to a shareholder or individual. 42 U.S.C.A. §§ 1011 (b) (8), and 1107(c) (7). The two subsections are identical in language, one having reference to the tax on employees and the other on employers.

The plaintiff claims that it is operated exclusively for "scientific" and "educational" purposes which exempt it from the tax, while defendant apparently admits that plaintiff is partially but claims it is not exclusively operated for those purposes and therefore the tax was legally collected. Manifestly the solution of the problem hinges upon the proper application of the term "exclusively" to the facts in the case, as there is no contention on the part of the defendant that any earnings of the plaintiff accrue to any shareholder or individual.

The plaintiff is organized as a corporation under Title 18, § 12, of the Oklahoma Statutes 1941, which applies to churches, libraries, benevolent, charitable, literary, educational, scientific and historical associations. In fact, its articles of incorporation provide that it is formed for scientific and educational purposes. Then is enumerated a large number of specifically designated activities contemplated along the line of scientifically growing crops and exhibiting them, the study of soils and the adaptation of various crops thereto, the raising of livestock under circumstances and conditions existing in the state, the most efficient use of manufactured machinery, with the object of educating the people of the state; and also maintaining and conducting schools of agriculture, fruit growing, livestock and poultry raising, cooking, home gardening, and the like. The articles also permit the maintenance upon its grounds of places of amusement for the pleasure of visitors

attending its exhibitions, provided they are in accordance with law and good morals.

Evidence in the case was not in dispute that the activities carried on by the plaintiff consisted of the scientific and educational features generally outlined in the articles of incorporation and that in addition amusement features were indulged consisting of night or day shows which are such as commonly classified as vaudeville and rodeo features.

There is no dispute in the evidence that all earnings from every portion of the activities of plaintiff are used in the matter of continuing the general programs and purposes of the plaintiff. In fact, there is no substantial dispute so far as the applicable testimony is concerned that the amusement features are carried on for the explicit purpose of augmenting the funds necessary to carry out the more important educational purposes of its charter.

The evidence of the plaintiff outlined somewhat in detail the plans and efforts used in effecting a schedule of events, demonstrations, and schools which were considered best adapted to the distribution of knowledge along the lines of agriculture, livestock, mineral, manufacturing and domestic sciences, so called. Likewise, a description was given of the specific manner in which these activities were carried out, such as schools by 4–H Clubs, Future Farmers of America, United States Department of Agriculture, the Agricultural Service of the Oklahoma A & M College and Vocational educational institutions, exhibits and demonstrations by women of home cooking and home furnishings, contests for newspapers tending to increase their service and efficiency, as well as other lines of activity affording opportunity to the individual to add to his common stock of knowledge in the enterprise in which he might be interested. The import of this testimony strongly supporting a theory in the development of science and education in accordance with the express purpose through the charter pronouncements of plaintiff, can not be lightly passed over.

Quite a portion of the oral testimony was directed along the line of developing the opinion of persons who had attended the exhibitions as to which was the more important, the exhibits, schools and educational demonstrations, or the strictly amusement features. If this testimony should be considered of any particular value it was in accentuating the well known diversities of human nature, in that some college professors and some waitresses were fonder of amusements than of educational features and vice versa. Neither does the proof tending to show that there were greater crowds on the grounds during the amusement programs add much to the solution of the problem here, as these crowds were shown to be somewhat mixed, many taking in both educational and amusement programs.

The problem is thrown back upon the Court as to whether the amusement program, which undoubtedly from the broad scope and analysis of the evidence is being carried on as auxiliary and as supplementary financial aid to the wider range of the scientific and educational program of plaintiff, shall exclude plaintiff from the classification of operating exclusively for scientific and educational purposes.

As has been heretofore stated, the case would seem to turn upon the construction of the word "exclusively" in the light of the facts developed. Plaintiff relies strongly upon the principle promulgated in Trinidad v. Sagrada Orden, 263 U.S. 578, 44 S.Ct. 204, 68 L.Ed. 458, where the Income Tax Act of 1913, excepting corporations organized and operated exclusively for religious, charitable, or educational purposes, when no part of the net income inured to the benefit of a private stockholder or individual, was considered and construed. It will be noted what close similarity there is between the language of that act and the one here under consideration. It was there held in substance that where the corporation was organized for the purpose stated and although it had income from rents, interest, sales of stock, and even sale of wines, chocolate, and similar articles, all adding a substantial amount to its income, yet these various activities, so long as the net income went to the support of the general religious and educational uses and purposes, the corporation was relieved from the tax because these activities were incidental to its main objects and purposes and it should not thereby lose its classification as an exclusively religious, charitable and educational institution.

Roche's Beach v. Commissioner, 2 Cir., 96 F.2d 776, is cited as a case of similar construction where the term "exclusive-

ly" was used in defining tax liability. It was there held that an operation of income producing activities, if incidental to the purposes of the organization, did not offend against the meaning of the term "exclusively" in its broad and practical sense. In both of the foregoing cases it was held that the greater emphasis should be placed upon the destination of the income for construction purposes.

Some of the other cases cited are Sand Springs Home v. Commissioner, 6 B.T.A. 198; Koon Kreek Klub v. Thomas, Collector, 5 Cir., 108 F.2d 616; which also adhere to the same line of reasoning.

The case of Jones, Collector, v. Better Business Bureau, 10 Cir., 123 F.2d 767, is mentioned in the briefs of both parties. If entitled to credit as authority in the case at bar it is to be aligned upon the side of plaintiff, but in that case there was no split activity so as to bring out in full relief for construction the meaning of the word "exclusively". There the principal question was whether the Bureau was in any sense engaged in educational operations, which the Court held it was, but there was only one class of activity involved.

On the other hand, counsel cite a number of cases, principally from state courts, which take a narrower view of what the term "exclusively" means in connection with compensation, income, and exemption statutes. Some of these are Christgau v. Woodlawn Cemetery Ass'n, 208 Minn. 263, 293 N.W. 619; Industrial Commission v. Woodlawn Cemetery Ass'n, 232 Wis. 527, 287 N.W. 750; Tri-State Fair v. Rowton, 140 Tenn. 304, 204 S.W. 761, L.R.A.1918F, 657; Carswell v. State, 118 Fla. 72, 159 So. 15; Memphis Chamber of Commerce v. City, 144 Tenn. 291, 232 S.W. 73. All of these cases have risen under varying facts and conditions and it would seem that no useful purpose could be served by analyzing them individually as to facts in the present inquiry, as all cases differ rather materially on fundamental facts.

This Court has found no particular solace in the argument that statutes concerning employment and social security should require a narrower construction than those concerning income taxes where the language being construed is virtually identical. There is no satisfying basis for the suggestion.

■■■■ Again the suggestion is made that because the Social Security Act was amended after the tax here concerned accrued, by which amendment agricultural and horticultural organizations are now exempt from the employment tax, 42 U.S.C.A. § 409(b) (10) (B), that the intent of Congress is thereby indicated that the plaintiff's class of organization was not theretofore exempt. We find no sound basis for this argument, but, in addition, plaintiff has not claimed that it is an agricultural organization and exempt as such although the Commissioner may now so classify it. The purpose expressed in its charter by its officials and by the evidence of its activities shows that it is operating in its broad plan for scientific and educational purposes and that only a portion of its activity is devoted to "agricultural" research in the commonly understood meaning of that term. It would seem reasonable to say that with the profit element eliminated as a factor, as here, that the term "exclusively" in the matter of the operation for scientific and educational purposes should be entitled to a construction of its broadest capable meaning to the end that the greatest possible accomplishment might be obtained in a laudable undertaking.

While the usual doubts and uncertainties which surround tax problems may be present here, yet, after hearing the evidence outlining the plans and purposes of the plaintiff, together with the infinite care taken and the arduous effort spent to spread knowledge of the practical things which tend to make for the progress and betterment of Oklahoma, I find myself unwilling to say that the plaintiff is doing anything more than carrying on its amusement features as a mere incidental function to assist it in promoting and expanding its educational program, something after the fashion of using well known movie stars to promote defense bond sales where the spectacular and lighter attraction agencies are commendably adopted as a means to a realization of the real benefits sought.

The conclusion is that the plaintiff should prevail and recover the tax with penalties and interest erroneously exacted, together with interest thereon.

Findings of fact and conclusions of law, expanded to support the foregoing decision, but in harmony therewith, reserving proper exceptions, together with an appropriate judgment, will be submitted by counsel for plaintiff in collaboration with defendant's counsel on or before April 25, 1942.