DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SOUTH FLORIDA FAIR AND PALM BEACH COUNTY
EXPOSITIONS, INC.,** a Florida corporation,
Appellant,

v.

**WIDLEY JOSEPH,** Individually, and as Parent & Natural Guardian of
**J.J.** and **J.J.,** his minor children,
Appellee.

No. 4D17-2816

[September 5, 2018]

Appeal of non-final order from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Cymonie Rowe, Judge; L.T. Case No. 502010CA006197XXXXMBAO.

Matthew J. Conigliaro of Carlton Fields Jorden Burt, P.A., Tampa, and M. Derek Harris of Carlton Fields Jorden Burt, P.A., West Palm Beach, for appellant.

Marwan E. Porter of The Porter Law Firm, LLC, Stuart, for appellee.

KUNTZ, J.

The South Florida Fair and Palm Beach Expositions, Inc. ("South Florida Fair") appeals the circuit court's order denying its motion for summary judgment and, as a result, denying it limited sovereign immunity. We conclude that the South Florida Fair is entitled to limited sovereign immunity. Thus, we reverse the court's order.

While waiting with his children to ride the bumper cars at South Florida Fair's annual fair, a group of teenagers approached Widley Joseph and demanded he hand them his watch. After he refused, the teenagers attacked him with weapons causing him serious injuries.

As a result, Joseph sued South Florida Fair and its operator, W.G. Wade Shows, Inc.[1] Joseph also served "notice and official claims pursuant

---

[1] Joseph dismissed his claims against W.G. Wade Shows, Inc. with prejudice.

to Florida Statute 768.28 regarding waiver of sovereign immunity in tort actions."

South Florida Fair moved for partial summary judgment, claiming limited sovereign immunity under section 768.28(5), Florida Statutes (2007). The circuit court denied the motion, concluding that the state did not have sufficient structural power over the South Florida Fair to render it an instrumentality of the state. First, the circuit court analyzed the statutory provisions of chapter 616 associated with "fair associations." Second, the circuit court analyzed *Plancher v. UCF Athletics Ass'n*, 175 So. 3d 724 (Fla. 2015), and concluded that despite the limited statutory regulation placed on fair associations by the state, the South Florida Fair is not an instrumentality of the state.

South Florida Fair appeals the court's denial of its assertion of sovereign immunity. To determine whether the South Florida Fair is protected by limited sovereign immunity, we consider whether it is mainly acting as an instrumentality or agency of the state. *See, e.g., Plancher*, 175 So. 3d at 726; *Prison Rehab. Indus. v. Betterson*, 648 So. 2d 778, 779-81 (Fla. 1st DCA 1994); *Shands Teaching Hosp. & Clinics, Inc. v. Lee By & Through Lee*, 478 So. 2d 77, 78-79 (Fla. 1st DCA 1985).

Entities "primarily acting as instrumentalities of independent establishments of the State are included in the definition within section 768.28(2) of 'state agencies or subdivisions.'" *Plancher*, 175 So. 3d at 726. Thus, if the South Florida Fair is mainly acting as an instrumentality of the State, it is entitled to limited sovereign immunity under section 768.28.

Chapter 616, Florida Statutes, titled "Public Fairs and Expositions," includes three parts: "Part I. General Provisions," "Part II. Trade and Safety Standards," and "Part III. Florida State Fair Authority." In Part III, the legislature created the Florida State Fair, "a public body corporate and politic." § 616.251(1), Fla. Stat. (2007).[2] The Florida State Fair "shall be considered an instrumentality of the state, subject to the jurisdiction of the state." *Id.* It "is charged with the responsibility of staging an annual fair to serve the entire state." § 616.251(3), Fla. Stat. Additionally, "[t]hroughout each year," the Florida State Fair must "promote the progress of the state and stimulate public interest in the advantages and development of the state by providing facilities for agricultural and industrial exhibitions, public gatherings, cultural activities, and other

---

[2] Unless otherwise indicated, all citations to Chapter 616 in this opinion are to Chapter 616, Florida Statutes (2007).

functions intended to advance the educational, physical, economic, and cultural interests of the public." § 616.255(2), Fla. Stat. And the activities of the Florida State Fair "constitute essential governmental purposes." § 616.260, Fla. Stat. The Florida State Fair is an entity entitled to limited sovereign immunity.

Of course, the South Florida Fair is not the Florida State Fair. It is authorized by Part I of section 616, and is "an association not for profit incorporated under this chapter for the purpose of conducting and operating public fairs or expositions." § 616.001(9), Fla. Stat.

These statutory provisions control the creation of a fair association, sections 616.01, .02, Florida Statutes, which can be district fairs, county fairs, community fairs, or regional fairs. § 616.001(2), (3), (5), (11), Fla. Stat. To receive a charter, the proposed fair association must apply to the circuit court in the jurisdiction for approval after compliance with the application requirements. § 616.03, Fla. Stat. Section 616.05 governs the amendment of a fair association charter, and section 616.051 governs the dissolution of a fair association which requires approval by both the Department of Agriculture and the circuit court.

Once a fair association is created, the statute controls its core purpose and activities. Fair associations "have the power to hold, conduct, and operate public fairs and expositions annually and for such purpose." § 616.08, Fla. Stat. A fair association can also "conduct and hold public meetings," and can provide "facilities for agricultural and industrial exhibitions, public gatherings, cultural activities, and other functions which the association determines will enhance the educational, physical, economic, and cultural interests of the public." *Id.* But a fair association may not conduct more than one annual public fair each calendar year without risking revocation of its charter by the court that granted it. § 616.14(1), Fla. Stat.

The statute also governs the assets of a fair association. "[A]ll money and property of the association shall . . . be and remain perpetually public property[.]" § 616.07(1), Fla. Stat. A fair association can obtain property "for the purpose of public fairs or expositions[.]" § 616.08, Fla. Stat. And the statute governs its use of funds. §§ 616.21-23, Fla. Stat.

A fair association is also required to provide proof of insurance in the amount of $300,000—an amount that exceeds the liability cap in section 768.28(5). *See* § 616.15(1)(f), Fla. Stat. ("Proof of liability insurance insuring the association against liability for injury to persons, in an amount of not less than $300,000 per occurrence."). Joseph argued to the

circuit court that requiring a fair association to provide proof of insurance beyond the liability cap in section 768.28, Florida Statutes, is "nonsensical" if the fair association has limited sovereign immunity. But as South Florida Fair argues, liability insurance provides both indemnification and coverage. The insurer secures counsel for the insured and pays for that counsel. Thus, the legislature's requirement that a fair association secure insurance in an amount above the liability cap is not dispositive.[3]

This statute governs the formation, operation, assets, dissolution, and other aspects of a fair association. It also has long been established that fair associations serve an essential governmental purpose. *Carswelll v. State ex rel. Marlowe*, 118 Fla. 72, 81, 159 So. 15, 18 (1935) (plurality opinion); *see also* Op. Att'y Gen. Fla. 95-17 (1995) (concluding that the South Florida Fair is "performing a government function" and an "'agency' for purposes of Chapter 119, Florida Statutes"); § 616.07, Fla. Stat. (2012) (amended by chapter 2012-204, Laws of Florida, to reflect that fair associations serve an "essential government purpose").

Above all, the statute *specifically* answers the question presented. "The preeminent purpose of state sovereign immunity is to accord States the dignity that is consistent with their status as sovereign entities." *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002). "The generation that designed and adopted our federal system considered immunity from private suits central to sovereign dignity." *Alden v. Maine*, 527 U.S. 706, 715 (1999). Sovereign immunity, unless waived, applies "regardless of the forum." *Id.* at 749.

The legislature effectuated a limited waiver of that sovereign immunity in section 768.28, Florida Statutes (2007). And there is no dispute that the Florida State Fair is entitled to section 768.28's limited sovereign immunity. So too is a fair association. Section 616.19, Florida Statutes, provides that a fair association and the Florida State Fair are equal in dignity:

---

[3] Joseph also argued the South Florida Fair had $30 million in insurance coverage and that "it defies common sense for the South Florida Fair to carry" such an amount of coverage if it is an instrumentality of the state. We assume the state entity in *Plancher* also had coverage above the liability cap. In *Plancher*, the Florida Supreme Court rejected the Planchers' argument that they could recover from the insurer any amounts that exceeded the liability cap. *Plancher*, 175 So. 3d at 728 n.4.

Any public fair or exposition heretofore or hereafter created pursuant to this chapter shall be designated by the name stated in the permit required or stated by its fair association and *shall be recognized by the state as equal in dignity to the Florida State Fair* and as fully recognized as the Florida State Fair.

(emphasis added). To conclude that the Florida State Fair is entitled to the limited sovereign immunity in section 768.28(2), but a fair association is not, would fail to recognize the two as equal in dignity.

In conclusion, the South Florida Fair is entitled to the limited sovereign immunity afforded by section 768.28, Florida Statutes (2007). We reverse the circuit court's order denying summary judgment and remand the case for further proceedings.

*Reversed and remanded.*

TAYLOR and DAMOORGIAN, JJ., concur.

*      *      *

**Not final until disposition of timely filed motion for rehearing.**

5